UNITED STATES v. CORLISS STEAM-ENGINE COMPANY.

1. Where the Secretary of the Navy possesses the power, under the legislation of Congress and the orders of the President, to enter into contracts for work connected with the construction, armament, or equipment of vessels of war, he can suspend the work contracted for when from any cause the public interest may so require ; and, where such suspension is ordered, he is authorized to settle with the contractor upon the compensation to be paid for the partial performance of the contracts.
2. When a settlement in such a case is made upon a full knowledge of all the facts, without concealment, misrepresentation, or fraud, it is equally binding upon the government and the contractor.

THE facts upon which the decision of the court rests are set forth in its opinion.

Submitted on printed arguments by *Mr. Solicitor-General Phillips* for the United States, and *Mr. Joseph Casey* for the appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

This case comes before us on appeal from the Court of Claims, and involves a consideration of the validity and binding character of a settlement, made between the Secretary of the Navy and the claimant, for work performed by the latter upon contracts with the Navy Department.   There is no dispute about the facts of the case (they are fully and clearly stated in the findings of the Court of Claims) ; and it would seem that there ought not to be any dispute as to the law applicable to them. The validity of the contracts is not questioned.   The work upon them was done under the supervision of an inspector of the Navy Department, and no complaint is made of the manner in which it was done.   When, in 1869, the department, upon the recommendation of a board of officers of the navy appointed by it, suspended the further progress of the work under the contracts, the claimant made a written proposition, in the alternative, either to take all the machinery and receive $150,000, or to deliver it in its then incomplete condition at the Navy Yard at Charlestown for $259,068, payable on delivery there.   The department accepted the latter proposition, recognizing the amount specified as the balance due on settlement of the contracts ; stating, however, that, in consequence of the very limited

appropriations, only a partial payment would be made on delivery of the machinery at the Charlestown Navy Yard, and that the balance could not be paid until Congress should make a further appropriation, but that a certificate for the amount due would be given to the claimant.

The machinery was accordingly delivered at the Navy Yard, with the exception of a few articles, for which a deduction from the amount of the settlement was allowed, and the certificate stipulated was given to the claimant.   Previous to this, however, the chief engineer of the navy, under direction of the department, examined the machinery, and made a detailed report, by which the department was fully informed of its condition, the progress made in its construction, and what remained to be done for its completion under the contracts.   There is no allegation or suggestion that the claimant was guilty of any fraud, concealment, or misrepresentation, on the subject; but on the contrary, it is clear that every fact was known to both parties, and that the whole transaction, as stated by the court below, was unaffected by any taint or infirmity.   If such a settlement, as the Chief Justice of the Court of Claims very justly observes, accompanied by the giving-up by one, and the taking possession by the other, of the 'property involved, cannot be judicially maintained, it would seem that no settlement by any contractor with the government could be considered a finality against the government.

The duty of the Secretary of the Navy, by the act of April 30, 1798, creating the Navy Department, extends, under the orders of the President, to "the procurement of naval stores and materials, and the construction, armament, equipment, and employment of vessels of war, as well as all other matters connected with the naval establishment of the United States." 1 Stat. 553.   The power of the President in such cases is, of course, limited by the legislation of Congress.   That legislation existing, the discharge of the duty devolving upon the secretary necessarily requires him to enter into numerous contracts for the public service; and the power to suspend work contracted for, whether in the construction, armament, or equipment of vessels of war, when from any cause the public interest requires such suspension, must necessarily rest with him.   As, in mak-

ing the original contracts, he must agree upon the compensation to be made for their entire performance, it would seem, that, when those contracts are suspended by him, he must be equally authorized to agree upon the compensation for their partial performance. Contracts for the armament and equipment of vessels of war may, and generally do, require numerous modifications in the progress of the work, where that work requires years for its completion. With the improvements constantly made in ship-building and steam-machinery and in arms, some parts originally contracted for may have to be abandoned, and other parts substituted; and it would be of serious detriment to the public service if the power of the head of the Navy Department did not extend to providing for all such possible contingencies by modification or suspension of the contracts, and settlement with the contractors.

When a settlement in such a case is made upon a full knowledge of all the facts, without concealment, misrepresentation, or fraud, it must be equally binding upon the government as upon the contractor; at least, such a settlement cannot be disregarded by the government without restoring to the contractor the property surrendered as a condition of its execution.

But aside from this general authority of the Secretary of the Navy, under the orders of the President, he was, during the rebellion, specially authorized and required by acts of Congress, either in direct terms or by specific appropriations for that purpose, to construct, arm, equip, and employ such vessels of war as might be needed for the efficient prosecution of the war. In the discharge of this duty, he made the original contracts with the claimant. The completion of the machinery contracted for having become unnecessary from the termination of the war, the secretary, in the exercise of his judgment, under the advice of a board of naval officers, suspended the work. Under these circumstances, we are of opinion that he was authorized to agree with the claimant upon the compensation for the partial performance, and that the settlement thus made is binding upon the government.        *Decree affirmed.*