United States v. Fletcher, etc., Trust Co., Rec.—197 Ind. 527.

ing elections, of counting the ballots, making the return thereof, and all other kindred subjects. It thus appears that the general election law and the primary law must be considered together, and when this is done, the conclusion must follow that the legislature intended and did actually make the general election contest law and the procedure in connection therewith a part of the primary law. Precinct committeemen are elected, not nominated, but we are not to be understood as holding that a nomination for office cannot be contested. Whether the election of a precinct committeeman is to fill an office or whether the primary law has created the office of precinct committeeman is of little consequence, in the face of the statute providing for precinct committeemen and when and how they are to be elected. Especially is this so when the legislature has, in effect, required the law of contests in general elections to be molded to fit elections by direct primaries. We therefore hold that the general election law providing for an election contest is applicable to the election of a precinct committeeman under the primary law.

The trial court did not err in its rulings which appellant has here assigned as errors.

Judgment affirmed.

UNITED STATES v. FLETCHER SAVINGS AND TRUST COMPANY, RECEIVER.

[No. 24,974. Filed April 21, 1926.]

1. RECEIVERS.—*Motion to strike out claim against receiver not rendered insufficient by fact that certain averments therein were verified on information and belief.*—A motion to strike out a claim against a receiver was not rendered insufficient by the fact that certain immaterial averments therein were verified on information and belief. p. 534.

2. RECEIVERS.—*Statutes of limitations and orders of court limiting time for filing claims against receiver not strictly enforced against claimants having an equitable right to be heard.*

United States v. Fletcher, etc., Trust Co., Rec.—197 Ind. 527.

—In administering a receivership, statutes of limitations and orders of court limiting the time within which claims against the receiver may be filed are not strictly enforced against persons who have an equitable right to be heard.   p. 535.

3.   OFFICERS.—*Decision of board or officer that fact exists which gives jurisdiction is conclusive against collateral attack, where such board or officer is authorized to make such decision.*— When the jurisdiction of a board or officer depends upon a fact which the board or officer is required to ascertain and determine by a decision which it or he is authorized to make, such finding and decision that the fact exists and that it or he has jurisdiction is conclusive against collateral attack.   p. 535.

4.   UNITED STATES.—*Settlement between United States and contractor with the government, made and consummated by officer having power and authority to determine amount due contractor under uncompleted contract, is conclusive against collateral attack.*—A settlement between the United States and a contractor with the government, made and fully consummated by a public officer having power and authority to determine the amount due a contractor under an uncompleted contract, is not open to collateral attack by either party.   p. 536.

5.   UNITED STATES.—*Government cannot recover on contract which is illegal in whole or in part, and cannot enforce certain provisions of such a contract and reject the others.*—The government cannot recover on a contract which is illegal as a whole or in any substantial part any more than an individual, and it cannot enforce certain provisions of such a contract and reject the others.   p. 536.

6.   RECEIVERS.—*Government's claim for overpayment on war contract held properly rejected where filed after time fixed for filing claims against receiver and four years after adjustment and settlement of rights of parties under the Dent Act.*—The government's claim for overpayment on a war contract *held* properly rejected where filed after the time fixed by the court appointing a receiver for filing claims and four years after the adjustment and settlement of the rights of the parties under §§1, 2 of the Dent Act (40 U. S. Stat. at L. 1272, §§1, 2 U. S. Comp. St. Ann. Supp. 1919, §§3115¹⁴/15a, 3115¹⁴/15b), especially where the claim is devoid of equity as against the creditors of the contracting corporation.   p. 537.

7.   UNITED STATES.—*United States must show equity in its favor to obtain a hearing when it comes into court of equity asserting claim for equitable relief.*—The United States must show equity in its favor the same as a private suitor to obtain a hearing when it comes into a court of equity asserting a claim for equitable relief.   p. 538.

8. UNITED STATES.—*United States can only enforce strictly legal demands through actions at law, subject to all legal defenses, the same as other suitors.*—The United States can only enforce strictly legal demands through actions at law, subject to all legal defenses, the same as other suitors. p. 538.

From the Marion Superior Court (A 17,140); *Linn D. Hay,* Judge.

Claim of the United States against the Fletcher Savings and Trust Company as receiver of the Premier Motor Corporation. On motion of the receiver, the claim was struck from the files, and the claimant appeals. *Affirmed.*

*Albert Ward,* U. S. District Attorney, *John G. Sargent,* Attorney-General of United States, *Paul Shipman Andrews, Jerome Michael* and *Alexander Holtzoff,* Special Assistant Attorneys-General, for appellant.

*Edward E. Gates, Martin Hugg, Moses B. Lairy, Frederick VanNuys, George M. Barnard* and *Julian C. Ralston,* for appellee.

EWBANK, C. J.—On verified motion, the trial court struck from the files a claim presented by the United States of America against appellee, as receiver of the Premier Motor Corporation, and the claimant appealed. The transcript discloses that the receiver was appointed on July 1, 1922; that the trial court ordered all claims against the corporation to be filed by October 25, 1922; that no claim was filed on behalf of appellant until December 5, 1923; and that on that date appellant filed a claim, which was afterward amended by supplemental claim, for a sum of money alleged to be due it by reason of overpayment made in settlement of a demand which the Premier Motor Corporation had against the United States for work done under certain contracts to manufacture articles for the use of the army in the great war. The original contract, as set out in the statement

530    SUPREME COURT OF INDIANA,

United States *v.* Fletcher, etc., Trust Co., Rec.—197 Ind. 527.

of appellant's claim, was in writing, and was entered into on November 20, 1917, so far as appears with the formalities prescribed by law. It provided that the United States should pay an agreed price for certain automobile truck chassis to be manufactured by the Premier Motor Corporation, and should also pay the actual cost to said corporation of all jigs, dies, patterns, additional machinery, tools and other facilities used exclusively in work for the United States, and should pay for spare parts at a rate specified, and make certain payments on the basis of allowing the corporation a fixed profit of a certain amount, and should also discharge any workmen designated by the United States as undesirable, in which case the United States should pay any expense thereby incurred; and it contained many other provisions which must be taken into consideration if a determination of the amount due from the United States to the corporation under its provisions were undertaken. It stipulated that the contracting officer reserved authority to make changes in the drawings and specifications forming part of the contract, and provided that the corporation should have an additional allowance for additional cost thereby caused, and also for any additional cost due to general wage increases that might be made, or to other specified causes. Authority was reserved to terminate the contract, and it was stipulated that the corporation should discontinue the manufacture of the trucks upon the termination of the war. Article V provided, in substance, that a "fixed profit" of $230 per unit of chassis delivered should be paid, subject to be diminished to not less than $220 under certain circumstances, but "if the actual cost (after subtractions) shall be found to be less than the estimate (after subtractions), the United States shall immediately pay the contractor in addition to the fixed profit previously paid, all fixed profit

withheld and 25% of such difference, *provided always* that the fixed profit after such addition shall not be more than $400 per unit," etc. The contract also contained the following provisions: "Article XXIV. Except as this contract shall otherwise provide, any doubts or disputes which may arise as to the meaning of anything in this contract shall be referred to the Chief of Ordnance for determination. If, however, the contractor shall feel agrieved at any decision of the Chief of Ordnance upon such reference, he shall have the right to submit the same to the Secretary of War whose decision shall be final."

Afterward, on April 23, May 15, June 4, and August 26, 1918, respectively, the parties made supplemental agreements, each of which was in writing, and purported to modify the original contract in certain particulars, but none of which were signed or purported to be signed by the contracting officer of the ordnance department named in each of these contracts as making the agreement on behalf of the United States, "acting by direction of the Chief of Ordnance, United States Army, and under the authority of the Secretary of War." On the contrary, while each supplemental contract recited that it was entered into by the Premier Motor Corporation "and the United States of America, by Samuel McRoberts, Colonel, Ordnance Department, National Army," etc., none of them bore the signature of the officer so named, but each purported to be signed by one of his subordinates. That assuming to exercise the authority conferred by the "Dent Act," approved March 2, 1919, (40 Stat. at L. 1272, §§1, 2, §§10378, 10379 Barnes Fed. Code, Supp. 1921) "to adjust, pay, or discharge any agreement, express or implied, upon a fair and equitable basis," etc., where such agreement was for the manufacture of supplies for the prosecution of the war and had been performed in part,

if "such agreement has not been executed in the manner prescribed by law," the secretary of war, through the board of awards of Cincinnati, Ohio, appointed by him, made an adjustment and settlement with the Premier Motor Corporation of all demands and liabilities under said contract and supplemental agreements, in December, 1919, at which time the United States paid the Corporation $777,084.21 as being in satisfaction of what was due from it to the corporation under the contract and supplemental agreements. Said Dent act further provided that no such settlement shall bar the United States from the right to review it and to recover an overpayment "if the Government has been defrauded," and gave the court of claims jurisdiction in case the secretary of war and the contractor failed to reach an adjustment. It is shown that in the next two and a half years after such settlement was made, with full knowledge of the settlement and relying thereon, in the good faith belief that the government had no such claim as this against its property, a bank that is now one of the creditors having claims against the Premier Motor Corporation made loans and extended credits to the corporation in the amount of $500,000, and other creditors whose claims have been filed and allowed in this cause extended credits to it in different amounts aggregating $1,440,000; that a large portion of said credits were extended to the Premier Motor Corporation while its plant was under the direction and control of a creditors' committee created by a creditors' extension agreement and later by a reorganization committee, and the affidavit in support of the motion averred upon oath that none of said loans or credits would have been made or extended if such creditors had been aware that the United States government intended to assert any further claim under its said contracts. That during a period of approximately four years after

the settlement was made, including the time when said debts were incurred and about a year and a half during which the receiver was adjusting the affairs of the corporation, embracing more than thirteen months after the time allowed by the order of court for filing claims against the receiver had expired, the United States did not in any way challenge such settlement and adjustment made by the secretary of war through the agency of the board of awards; and only after the lapse of all that time, and after the Premier Motor Corporation had thus acquired nearly $2,000,000 of loans and credits following the adjustment and payment of said claim, and its property had passed into the hands of a receiver and after he had been engaged for nearly a year and a half in settling up its affairs, did the United States present its claim.  And this claim is based, in part, on allegations that the original contract contained the provision above set out for paying "a bonus or bogie profit," of twenty-five per cent. of the decreased cost of production below the estimate, not, however, to exceed $400 per unit, which provision was alleged in the claim to be "illegal as against public policy," and that a large sum had been allowed and paid in compliance with that provision; and that the United States paid for certain materials used by the corporation more than it should have paid in view of the prices at which they were first contracted for by the corporation with the subcontractors from whom they were obtained, which prices were changed by supplemental agreements, but that "such supplemental agreements (of the corporation) with the various sub-contractors were illegal and of no effect"; and that the United States allowed and paid for transportation charges more than was due, and that certain materials paid for by the United States were never received nor used by the corporation; and that "the first supplemental agreement" and the "third

supplemental agreement" assuming to modify the terms of the original contract "were void for want of consideration to the United States of America," while under certain terms of the original contract which these supplemental agreements purported to modify there is due the United States as liquidated damages for delay in making deliveries the sum of $81,842.68, in addition to the amounts overpaid under other provisions of the contract and agreements.

A motion to strike out the claim was sustained on the ground that the United States had not shown any equitable right to be heard in support of such a claim after the time allowed for filing claims had long since passed, and that, in the absence of any showing of fraud in the settlement made with the secretary of war, pursuant to the Dent act, or of any effort to set aside or reopen that settlement, the United States cannot make a collateral attack upon it by an action to recover back a part of the money paid in effecting it. This motion was supported by an affidavit which directly asserted the truth of all the facts therein stated that were material in this cause, and added, upon information and belief, that the boards of awards appointed by the secretary of war have adjudicated claims aggregating millions of dollars upon contracts signed like the ones here in controversy, and have carried on adjudications of such contracts and claims for a period of several years, all of which has been acquiesced in by the government. We do not consider the motion and affidavit insufficient by reason of the fact that these matters were stated on information. They might have been wholly omitted without affecting the sufficiency of the motion.

The receivership was being administered by a court of equity, and statutes of limitations and orders of court limiting the time within which actions may be

commenced are not strictly enforced by such courts
2. against persons who' have an equitable right to
be heard. But the question arises whether
there is any equity in the demand of the United States
under the facts above stated, or whether a court of
equity might properly refuse to reopen the receivership
and adjudicate this claim, even though it could be shown
that, under the letter of the law as applied to the legal
provisions of the contracts, sums credited and paid to
the Premier Motor Corporation under certain items of
the contracts were more than were actually due.

It is an established principle that where an officer
or a board is authorized to enter into a contract or
make a settlement on behalf of the public,
3. whether as representative of a city, county, state
or nation, in the event that certain facts exist,
the finding and decision by such officer or board that
the required facts exist, followed by the execution of
such a contract or making of such a settlement pursu-
ant to that finding, conclusively establishes the exist-
ence of those facts as against any collateral attack on
the validity of the contract or settlement, when such
collateral attack is made on behalf of the public as well
as when the other party to the contract makes it. *Com-
missioners* v. *Aspinwall* (1858), 21 How. (62 U. S.)
539, 544, 16 L. Ed. 208; *City of Indianapolis* v. *Con-
sumers, etc., Co.* (1895), 140 Ind. 246, 253, 39 N. E. 943.

Whenever the jurisdiction of a board or officer de-
pends upon a fact or facts which the board or officer is
required to ascertain and determine by a decision that
it or he is authorized to make, the finding and decision
by such board or officer that the fact or facts exist
and that it or he has jurisdiction, if not set aside by
appeal or upon a direct attack, is conclusive against
collateral attack. *Lewis* v. *Frick* (1914), 233 U. S.
291, 300, 34 Sup. Ct. 488, 58 L. Ed. 967; *In re Wasser-*

*fallen* (1924), 298 Fed. 826, 829; *Johnson* v. *City of Indianapolis* (1910), 174 Ind. 691, 703, 93 N. E. 17; *Adams* v. *Harrington* (1887), 114 Ind. 66, 71, 14 N. E. 603.

And where power and authority to determine how much is due a contractor under an uncompleted contract with the United States has been conferred by law upon a public officer, a settlement made and fully consummated by him on behalf of the government is not open to collateral attack by either party. Thus, where the construction of a gunboat under a contract with the United States was discontinued, and the secretary of the navy made an agreement with the contractor assuming to fix how much was due on cancellation of the contract, and paid him on that basis, the Supreme Court of the United States held that in the absence of fraud, misrepresentation or concealment, the settlement was binding on the United States equally as it was on the contractor. *United States* v. *Corliss Steam Engine Co.* (1875), 91 U. S. 321, 323, 23 L. Ed. 397.

As we have seen, the claim of appellant in the case at bar is based, in part, on an allegation that certain provisions of the original contract were illegal, and in part on the further allegation that two of the supplemental agreements were illegal, and it appears from what is alleged in the statement of the claim that the contract between appellant and the corporation, as given a practical interpretation by the acts of the parties, and as construed in making the alleged settlement of accounts, and also as appellant seeks to enforce it by this action, consisted of five written instruments, only one of which was signed by the officer by whom it purported to have been made on behalf of the United States. And that the claim is based, in considerable part, on the alleged illegality of important provisions of the several instru-

ments. But if the contract as a whole, with the supplemental agreements, or any substantial part of it, was illegal, it was not binding on either party. The United States cannot select certain provisions of its contracts and enforce them to the letter, while rejecting as illegal other parts of the same contracts.

The Dent act expressly authorized the secretary of war "to adjust, pay or discharge" the agreement under which these trucks were manufactured "upon a fair and equitable basis" in case "such agreement has not been executed in the manner prescribed by law," which settlement and payment was declared to be final, subject only to be set aside for fraud or upon review for cause. No method was prescribed for determining in advance of the action thus authorized to be taken by the secretary of war whether or not any particular contract or agreement came within the description of not being "executed in the manner prescribed by law," except by a decision of the secretary of war, and the question which contracts were embraced by that description was left for his determination, subject to review for fraud, and to the requirement that "the Secretary of War shall report to Congress at the beginning of its next session following June 30th, 1919, a detailed statement showing the nature, terms and conditions of every such agreement and the payment or adjustment thereof." §1, supra.

The decision, in good faith, by the secretary of war, under authority of this statute, that the contract with the Premier Motor Corporation, as modified by

6. the four supplemental agreements, constituted an "agreement not executed as prescribed by law," and the subsequent settlement and adjustment "upon a fair and equitable basis" of the claim which the corporation had for the money due it from the United States on cancellation of its contract, having been fol-

lowed by payment of the amount so determined, and tacitly approved by the failure of Congress to reject this settlement when reported to it, and acquiesced in by appellant for four years and until long after the property of the Premier Motor Corporation had been taken over by a receiver for distribution among its creditors, should not lightly be disregarded. And a claim now advanced on the ground that the adjustment made by the secretary of war on what he deemed "a fair and equitable basis" was not strictly according to the letter of those parts of the contracts which were legal and valid, after one article in the original contract, and two entire supplemental agreements should have been rejected and disregarded, has little appeal to a court of conscience. Considered in connection with the stipulation in Article XXIV of the original contract that any doubts and disputes which might arise as to the meaning of anything in the contract should first be referred to the Chief of Ordnance for determination, with the further right of the contractor "to submit the same to the Secretary of War, whose decision shall be final," an attempt by the United States at this late day to attack the settlement made by the secretary of war collaterally, treating it as the basis of an adjustment by limiting the amount due the contractor, while not binding upon the United States as fixing that amount, and proceeding upon that theory in suing to recover back alleged overpayments, does not seem to be supported by any equity whatever.

When the United States comes into a court of conscience, asserting a claim for equitable relief, it must show an equity in its favor, in order to obtain 7, 8. a hearing, the same as any private suitor. And so far as strictly legal demands are concerned, it can only enforce them through actions at law, subject to legal defenses, the same as other suitors.

We conclude that the claim presented on behalf of appellant, the United States of America, showed on its face that it was wholly without equity, and that upon its presentation to a court of equity engaged in the settlement of a receivership, long after the time fixed for filing claims, the court did not err in rejecting it and striking it from the files.

The judgment is affirmed.