GEORGE A. FULLER COMPANY *vs.* COMMONWEALTH.

Suffolk.    April 3, 1939. — May 24, 1939.

Present: FIELD, C.J., DONAHUE, DOLAN, & COX, JJ.

*Department of Public Works.  Commonwealth.  Contract,* Validity.

The State department of public works had no authority to bind the Commonwealth by a contract to pay money in compromise of a disputed claim for alleged breach by the Commonwealth of a contract, made through that department, for the construction of a portion of a State highway.

PETITION, filed in the Superior Court on February 10, 1937.

The petition was heard by *Good,* J.

*F. R. Mullin,* (*J. A. Daly* with him,) for the petitioner.

*E. O. Proctor,* Assistant Attorney General, for the Commonwealth.

Cox, J.   This is a petition under the provisions of G. L. (Ter. Ed.) c. 258, which confers jurisdiction upon the Superior Court, except as otherwise expressly provided, of all claims at law or in equity against the Commonwealth. The case was referred to an auditor (c. 258, § 2). It was thereafter heard by a judge of the Superior Court upon the auditor's report, no other evidence being introduced. The judge denied the petitioner's requests for rulings of law and allowed the respondent's motion for judgment. The petitioner excepted to the allowance of this motion, to the refusal to give its requests, and to other rulings of the judge. The petitioner also claimed an appeal from the order of the judge allowing the respondent's motion for judgment. The appeal is not before us and the case will be considered on the petitioner's exceptions.

The petitioner and the Commonwealth, through its department of public works, entered into a contract on May 23, 1934, for the construction of a portion of a State highway. The work involved also a part of a Federal aid project, thirty per cent of the cost of which was to be borne by the Federal government, and seventy per cent by the Commonwealth. The project itself and the contract were approved by the emergency public works commission of the Commonwealth, acting under St. 1933, c. 365. The contract was a so called unit price contract based upon specifications made by the department of public works, according to which the estimated amount to be paid under the contract was $364,652.43. As the work progressed it developed that the estimates of quantities varied from the quantities which were in fact used, and the work actually done was greater than that which was originally estimated. Payments were made under the contract estimates, which were documents, prepared by the department of public works, purporting to show the work that had been done and which contained the certificate of the chief engineer and the department of public works. The work

under the contract was certified as complete as of May 22, 1935. On the various estimates, including one of January 30, 1936, for the amount of $75,792.93, the petitioner was paid $465,130.74. At the time this estimate of January 30, 1936, was approved and paid to the petitioner it was claiming other and further amounts. Since early in 1935 it had had claims against the Commonwealth in addition to those that were approved for payment from time to time. These claims in substance were as follows: (1) Claims for extras and increased difficulties of performance consisting of thirty-five items totalling $201,210.94. (The amount of these claims was substantially reduced by the granting of additional allowances, and no question is raised as to these allowances.) (2) Claims for additional costs, resulting from the Commonwealth's engineers' requiring the work to proceed through the winter months instead of permitting a suspension according to an alleged agreement with the department of public works, amounting to $66,009.66. (The claims under (1) and (2) were reduced to formal statements and were filed with the department of public works about September, 1935.) (3) Claims for damages resulting from alleged faulty plans and specifications, and delay in executing the contract totalling, when they were first made up in January, 1935, $84,529, but later increased to about $100,000. (These claims were never presented as formal written claims, but were brought to the attention of the department of public works and were the subject of negotiations between the petitioner and that department.) There were negotiations for settlement between the petitioner and the department of public works, the petitioner claiming $221,742 on claims detailed under (1) and (2), and approximately $100,000 for increased costs and "other acts of omission and commission on the part of the department of public works," under claim (3). As a result of their negotiations "a bona fide compromise agreement was arrived at on November 10, 1936, and was reduced to writing." This agreement is contained in a letter to the petitioner dated November 10, 1936, signed by the department business agent, to which was attached a copy of the

final estimate, covering work done under the contract and showing the total value of work done as $615,638.80; and a letter addressed to the department of public works and signed by the petitioner's "cashier," in which it is stated that the final estimate referred to in the letter of the business agent is correct and that the petitioner agrees to accept the amount shown thereon as a satisfactory settlement and as a final payment. The final estimate of November 10, 1936, called for the payment of $150,508.06, of which $15,508.06 was admittedly due, and the balance, $135,000, was "extra allowance." This estimate with the approval of the department of public works was sent to the comptroller. The emergency public works commission did not participate in the negotiations for settlement, and the settlement agreement was not brought to its attention until after November 10, 1936. Thereafter, the commission, on December 21, 1936, considered the petitioner's claim for the "extra allowance" of $135,000, and was of the opinion that it "ought not on its merits to be paid." The comptroller was notified of this action and he prepared and sent to the Governor and Council an uncertified warrant for the amount of the alleged settlement. On December 31, 1936, the petitioner, allegedly pursuant to the provisions of G. L. (Ter. Ed.) c. 30, § 5, appealed to the Governor and Council from the decision of the emergency public works commission dated December 21, 1936, relative to the petitioner's claim for $135,000. On the same day the Governor and the Council voted that there was due and payable to the petitioner $135,000, and "we do hereby annul the vote or order of the emergency public works commission as of December 21, 1936." The commissioner of the department of public works wrote a letter to the Governor and Council on January 2, 1937, relative to the petitioner's claim and the alleged settlement, in which among other things he stated: "In view of the nature of this compromise settlement it is, of course, not possible to assign any definite amount of the settlement price to any particular item or detail of this claim." On January 6, 1937, the Governor and Council voted that the emergency

public works commission had no jurisdiction or power ·in the matter of approval or nonapproval of the final pay estimate; that the jurisdiction and power to approve that estimate rested in the department of public works; that any order, rule or regulation to the contrary adopted by the commission, "if legally any there be, is hereby annulled"; and that "the decision of the emergency public works commission, dated December 21, 1936, . . . hereby is annulled." And it was voted also that the compromise and settlement of the claims of the petitioner made by the department of public works in the sum of $135,000 be approved. The Treasurer declined to make payment under the warrant for payment, and this petition was brought.

It is a fundamental principle of our form of government that the Legislature, which is the appropriating branch, has sole power to authorize the payment of claims against the Commonwealth. *Opinion of the Justices,* 302 Mass. 605, 612. It is also a fundamental principle of our jurisprudence that the Commonwealth cannot be impleaded in its own courts except by its own consent clearly manifested by act of the Legislature. *Troy & Greenfield Railroad* v. *Commonwealth,* 127 Mass. 43, 46. "The first general law by which jurisdiction was conferred upon the courts to adjudicate upon claims against the Commonwealth was St. 1879, § [c.?] 255. Before this act the only relief open to those who had suffered damage by dealings with the representatives of the Commonwealth was by petition to the Legislature," *McArthur Brothers Co.* v. *Commonwealth,* 197 Mass. 137, 138, and ·"The object of the statute [St. 1887, c. 246] . . . [was] to provide a convenient tribunal for the determination of claims of the character which civilized governments have always recognized, although the satisfaction of them has been usually sought by direct appeal to the sovereign, or, in our system of government, through the Legislature." *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 31, 32. The consent of the Commonwealth to be impleaded in its own courts as first given by St. 1879, c. 255, and as now made manifest by G. L. (Ter. Ed.) c. 258, is stated distinctly,

but that consent is thereby given with certain limitations and conditions no less distinctly stated. The "case shall be tried by the court without a jury. All hearings shall be in open court. . . ." (c. 258, § 2). There is no recognition of the right to any writ. "Such claims may be enforced by petition stating clearly and concisely the nature of the claim and the damages demanded, . . ." (§ 1). "If the final decision is in favor of the petitioner, the chief justice of the superior court shall certify to the governor the amount found due, . . . and the governor shall draw his warrant for such amount on the state treasurer, who shall pay the same from any appropriations made for the purpose by the general court" (§ 3). Obviously no execution lies against the Commonwealth. The statute contains a provision for the "offer of judgment" (§ 2), but if there is any power on the part of a State agency to settle claims against the Commonwealth by virtue of the statute permitting claims to be enforced by petition against the Commonwealth, under said c. 258, we think it is clear that that power can be exercised only after the petition is brought. We are not concerned with the inherent power of the Legislature to deal with claims against the Commonwealth.

In our opinion the consent of the Legislature conferring jurisdiction upon the Superior Court of claims against the Commonwealth, does not grant power to governmental departments to settle such claims when they involve the particular department, and cases where it has been held that town and fire districts have the power to settle claims against them are distinguishable. As was said in the case of *Matthews* v. *Westborough*, 131 Mass. 521, at page 522, "It is in the power of towns to settle claims which may be made upon them arising out of their administration of their municipal affairs. A vote to appropriate money for such a purpose is therefore binding upon them, even if upon subsequent examination it is ascertained that the claim which was to be settled thereby was one which could not have been successfully maintained. . . . They have no authority to appropriate money for gratuities to persons whose situation may appeal to public sym-

pathy." This was an action to recover money alleged to have been voted to the plaintiff by the defendant town. In the case of *Prout* v. *Pittsfield Fire District*, 154 Mass. 450, the plaintiff sued for and recovered a sum of money voted to be paid by the defendant in compromise of a claim of the plaintiff upon which an action of tort brought by her against the defendant was still pending. It was there held that the fire district was a *quasi* corporation; that among its inherent corporate powers was the power to sue and be sued; and that the power to compromise doubtful claims is inherent in the power to sue and the liability to be sued. See *Jones* v. *Natick*, 267 Mass. 567, and cases cited. Without attempting to examine all of the cases that bear upon this particular point, we think that the rule which is generally stated is that the municipality or the *quasi* corporate body may itself compromise claims, but that this is far from saying that one of its officers or agents would have the same authority.

The petitioner contends, however, that the power to make and supervise the execution of contracts impliedly carries with it the power to adjust and compromise disputes arising out of or in connection with the work to be done under the contract. G. L. (Ter. Ed.) c. 16 provides for the creation of the department of public works but contains no reference to the duties of that body with respect to the making of contracts, except that the commissioner, who is the executive and administrative head of the department, is required to approve all contracts made by the department. Its duties are defined generally in G. L. (Ter. Ed.) c. 81, relating to State highways, which empowers the department to make various contracts necessarily incident to the construction, repair and maintenance of certain highways, in some instances subject to the approval of the Governor and Council, and also to acquire land for highway purposes by purchase, gift or the right of eminent domain, in some instances subject to the approval of the Governor and Council. As to contracts generally for building construction, see G. L. (Ter. Ed.) c. 29, §§ 7 and 8. Section 27 of said c. 29 excepts

the department from the prohibition against any public officer or board incurring obligations against the Commonwealth unless a sufficient appropriation has been made therefor, and permits the department, in anticipation of such appropriations, with the approval of the Governor and Council, to make contracts for the construction and reconstruction of State highways, which shall be binding on the Commonwealth in limited amounts.   The department has general supervision and control of the construction, repair and maintenance of State highways and it well may be that within its own sphere it has broad discretionary authority which, from the very nature of the general powers and duties with which it is invested, it must exercise as a matter of convenience and necessity.   But once work has been begun under a construction contract, except possibly for purposes of modifying the contract (see *G. M. Bryne Co.* v. *Barnstable,* 286 Mass. 544, 555), the control of the department over the obligation of the Commonwealth under the contract to pay would seem to be at an end apart from its supervisory control over the work.   An agreement of compromise, which by its terms seeks in part to bind the Commonwealth to pay damages for an alleged breach of contract by the department, is not an essential duty, the absence of which would inconvenience the functioning of the department in the performance of other duties with which it is invested by statute.   Such an agreement in a limited sense is ancillary and related to the original construction contract, but in its primary and ultimate effect, if enforceable, would serve the purpose of creating a new and independent obligation binding upon the Commonwealth, irrespective of the terms of the original contract and unimpeachable except perhaps for fraud.   This authority, which would carry with it the correlative right to assess the Commonwealth for the department's own error and determine the damage ensuing, which determination the sovereign would, as a general rule, have no right to attack, is not lightly to be inferred even though the injured party may recover otherwise than on the compromise agreement if his claim is just.   We are not impressed by the

argument advanced by the petitioner that by the exercise of such authority the Commonwealth, through the department, may, to its advantage, settle large claims for small amounts. If there is such advantage, we think it is outweighed by the dangers involved in the exercise of the power, and unless the power is either expressly given or required by necessary implication, it ought not to be found. Compare *Boston, Worcester & New York Street Railway* v. *Commonwealth,* 301 Mass. 283; *Antoun* v. *Commonwealth, ante,* 80. The case at bar is distinguishable from *Willar* v. *Commonwealth,* 297 Mass. 527, where it was held that the department of public works having authority under G. L. (Ter. Ed.) c. 79, § 6, to "award the damages sustained by persons in their property" by reason of a taking under G. L. (Ter. Ed.) c. 81, § 7, of land "'by eminent domain on behalf of the commonwealth under chapter seventy-nine' for the purposes of a State highway," had authority under § 39 of said c. 79 to effect a "settlement of the damages with the person entitled thereto" (page 528). The terms of such settlement under these provisions of the statutes are quite apart from the settlement of any claim for damages for breach of contract.

We do not think the alleged compromise agreement is enforceable. The conclusion reached is supported by the reasoning in *William Cramp & Sons Ship & Engine Building Co.* v. *United States,* 216 U. S. 494, and *California Highway Commission* v. *Riley,* 192 Cal. 97. Compare *American Sales Corp.* v. *United States,* 32 Fed. (2d) 141. It is not in conflict with *United States* v. *Corliss Steam-Engine Co.* 91 U. S. 321, or *Wells* v. *Nickles,* 104 U. S. 444, or *United States* v *Koplin,* 24 Fed. (2d) 840, or *United States* v. *Mason & Hanger Co.* 260 U. S. 323. See *United States* v. *Fletcher Savings & Trust Co.* 197 Ind. 527.

*Exceptions overruled.*