# HARTSVILLE OIL MILL *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 609.   Argued March 3, 4, 1926.—Decided April 12, 1926.

1. Jurisdiction of the Court of Claims to hear and decide a claim, existing under Jud. Code, § 145, was not affected by a resolution of the Senate referring to that court for consideration and report (Jud. Code, § 151) a bill for payment of the claim. P. 44.
2. The fact that a government contractor signed a settlement after negotiations in which government officers threatened to break the existing contract if the settlement were not accepted, does not of itself support a legal inference that the settlement was procured by duress. *Freund* v. *United States,* 260 U. S. 60, distinguished. P. 48.
3. A threat to break a contract does not constitute duress in the absence of evidence of some probable consequences of it to person or property for which the remedy afforded by the courts would be inadequate. P. 49.
4. Mutual promises of the parties are adequate consideration sustaining a compromise of a disputed contract. P. 50.

60 Ct. Cls. 712, affirmed.

APPEAL from a judgment of the Court of Claims.

*Messrs. Christie Benet* and *Wade H. Ellis,* with whom *Mr. Don F. Reed* was on the brief, for appellant.

*Mr. Paul Shipmen Andrews,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* and *Messrs. Arthur M. Loeb* and *Harold Horvitz,* Special Assistants to the Attorney General, were on the brief, for the United States.

MR. JUSTICE STONE delivered the opinion of the Court.

On February 5, 1923, a bill (S. 4479) was introduced in the Senate authorizing and directing the Secretary of the Treasury to pay to two hundred and eighty-five named persons, firms and corporations, including the appellant, "which entered into contracts with the United States of America through the agency of the United States Ordnance Department, which contracts were cancelled by said Ordnance Department, the several sums set opposite their names." By Senate Resolution of March 3, 1923, the bill, with accompanying documents, was referred to the Court of Claims for consideration and report. Jud. Code, § 151. Appellant filed its petition in the Court of Claims, referring to the Senate bill and resolution and setting up a claim upon a contract of September 26, 1918, for the sale of cotton linters to the Government. The Court of Claims held, upon the facts found, that it had jurisdiction to render a judgment under the provisions of chapter 7 of the Judicial Code; that the plaintiff was not entitled to recover upon its claim, and entered judgment dismissing the petition.

The case comes here on appeal. Jud. Code, § 242, before its repeal by the Act of February 13, 1925.

The petition sets out a cause of action for failure of the Government to perform its contract of September 26, 1918, and, by way of anticipation of a defense, alleges that a later contract of December 31, 1918, between appellant and the Government, purporting to cancel the earlier contract, was procured by duress and was without consideration. The jurisdiction to hear and determine the

claim is conferred by Jud. Code § 145, and was not enlarged or otherwise affected by the Senate resolution.

The petitioner, a South Carolina corporation, was engaged in the business of crushing cotton seed for the production of cotton seed oil, cotton seed meal and other cotton seed products, including cotton linters, which are the short fibres adhering to cotton seed after the removal of the staple cotton by ginning. During the late war, cotton linters were used extensively in the manufacture of explosives. After the entry of the United States into the war, appellant, with all others engaged in the production of cotton seed products, became subject to the direction and control of the War Industries Board (Act of May 20, 1918, c. 78, 40 Stat. 556), and of the United States Food Administration (Act of August 10, 1917, c. 53, 40 Stat. 276), with respect to the production and distribution of their product and the prices of both the raw material purchased and the product sold by them. This control was an essential feature of a plan to stabilize price and stimulate production.

Appellant, by its contract, which was similar in form and content to those of the other manufacturers named in the Senate resolution, agreed to sell to the Government its estimated product of cotton linters for the year ending July 31, 1918, approximately 2,250,000 pounds, at 4.67 cents per pound. The contract contained a clause authorizing the Government to cancel it " in the event of the termination of the present war " with the proviso that the seller should continue to make deliveries for thirty days after the effective date of cancellation and that the Government should save the seller harmless from actual loss resulting from the cancellation.

In November, 1918, after the armistice, negotiations were begun between the Cotton Products Section of the War Industries Board and a Committee representing appellant and other manufacturers, for the adjustment

and settlement of all obligations upon appellant's contract of September 26th and all similar contracts. In the course of these negotiations, it was contended by the representatives of the Government and denied by the Committee that the termination of the war had occurred, within the meaning of the cancellation clause. The War Industries Board ceased to function on December 21, 1918, and these negotiations were continued on behalf of the Government by representatives of the Ordnance Department. On December 30, 1918, officers of this department notified the Committee that the Government would settle its obligations upon these contracts only by accepting the linters then on hand and inspected, about 270,000 bales, and would take only a part of the linters produced between January 1 and July 31, 1919, not to exceed 150,000 bales, the amount taken to be pro-rated among the manufacturers. At the same time they notified the Committee that, unless this proposal was accepted within one hour from the time it was made, the Government would refuse to perform its contracts and would refuse to accept or pay for any linters either on hand with the manufacturers or afterwards produced by them, and that appellant and other manufacturers could seek their remedy in the courts.

Within the hour, the Committee, although protesting against the Government's interpretation of the contract and the position taken by its representatives, notified them that the manufacturers would accede to the proposed modification of their contracts. On the same day, the Ordnance Department gave to appellant and other manufacturers telegraphic notice of the cancellation of their contracts, and on January 2, 1919, a form of contract, embodying the verbal agreement reached between the officers of the Ordnance Department and the Committee, was submitted to the appellant and the other manufacturers, accompanied by a copy of a letter of the

Ordnance Department stating that linters would not be accepted by the Government from any producer who refused to execute the contract. Appellant's counsel assisted in the preparation of this letter. The form contract, dated December 31, 1919, was signed by appellant; it contained recitals of the cancellation of the earlier contract of September 1918; that a dispute had arisen as to whether the war had terminated and as to the measure of damages provided by the cancellation clause in the earlier contract, and stipulated that the new contract was in lieu of cancellation of the earlier contract and a modification of it.

The findings of the Court of Claims establish appellant's right to recover under the earlier contract if it was not modified by the later one. Appellant urges that the later contract does not bar such recovery because the coercive measures resorted to by officers of the Ordnance Department, to induce its execution, amount in law to duress, rendering the second contract invalid and without force to modify the first. To support this position appellant relies on the serious consequences which the industry would have suffered if the Government had wholly refused to perform its contracts. It asserts that 270,000 bales of linters already inspected by the Government were in the hands of manufacturers; that a million tons of cotton seed, purchased at the uniform price of $70 fixed by the Government, were on hand; that the manufacturers had made commitments for the purchase of 480,000 tons in the hands of farmers. It is contended that the Government's refusal to carry out the contracts would have resulted in the failure of the scheme for the stabilization of the price of cotton seed and its products, and in the collapse of the business structure which had been reared upon the basis of the stabilized price, and that great loss would have resulted to appellant and other manufacturers.

A difficulty encountered by the appellant at the outset is that this view is not supported by the findings made. On its own theory of the case, appellant must prove the probable injury which it would have suffered from the threatened refusal of the Government to carry out its contract, and that fear of that loss was the effective cause of its executing the settlement contract. Any inference that the business of manufacturing and distributing cotton seed products would have been disastrously affected, would avail appellant nothing because it does not appear what the consequences to its own business and finances would have been.

The findings establish that on December 30, 1918, there were in the hands of manufacturers 270,000 bales of linters; but it does not appear what proportion of them, if any, were in the hands of appellant. There is no finding with respect to the amount of cotton seed or cotton seed products in the hands of the manufacturers. There is no finding with respect to the nature or extent of the commitments of the manufacturers for the purchase of seed, or as to the nature or extent of the loss which appellant would have suffered if on December 30, 1918, the Government had refused to go forward with its contract; or that the legal damages for such breach of contract would not have been adequate to compensate for its loss. There is no finding that appellant was induced to sign the settlement contract by fear of the consequences of a refusal to sign.

In applying to the facts of this case the principles which control duress as a legal ground for avoidance of a contract, we are limited to such conclusions of law as may be drawn from the fact found by the court below, that the appellant signed the settlement contract after negotiations in the course of which the threat was made that the Government would disregard the admitted obligations of its contracts unless those entitled to the performance of

them would yield to its demands. This threat was discreditable to the officers who made it and injurious to the Government, whose high obligation to deal justly and according to law, with those with whom it contracts, might well have been their first concern. But a threat to break a contract does not in itself constitute duress. Before the coercive effect of the threatened action can be inferred, there must be evidence of some probable consequences of it to person or property for which the remedy afforded by the courts is inadequate. *Silliman* v. *United States,* 101 U. S. 465; *Rosenfeld* v. *Boston Mut. Life Ins. Co.,* 222 Mass. 284; *Hackley* v. *Headley,* 45 Mich. 569; *Goebel* v. *Linn,* 47 Mich. 489; *Cable* v. *Foley,* 45 Minn. 421; *Wood* v. *Telephone Co.,* 223 Mo. 537; *Secor* v. *Clark,* 117 N. Y. 350; *Doyle* v. *Rector, etc., Trinity Church,* 133 N. Y. 372; *Smithwick* v. *Whitley,* 152 N. C. 369; *Earle* v. *Berry,* 27 R. I. 221; and see *Mason* v. *United States,* 17 Wall. 67; *United States* v. *Child,* 12 Wall. 232.

*Freund* v. *United States,* 260 U. S. 60; *Hunt* v. *United States,* 257 U. S. 125; *United States* v. *Smith,* 256 U. S. 11, relied upon by appellant, present different considerations from those involved here. All were cases in which Government contractors were called on to perform extra services, the representatives of the Government taking the position that the services demanded were stipulated for by the contracts. In each it was held that the services were not contemplated by the contract, and that the contractor did not assent to the Government's construction. There was consequently no legal bar to the contractor's recovering the fair value of the service rendered to the Government, the Postmaster General having authority to request the services and to pay for them. See also *United States* v. *Stage Co.,* 199 U. S. 414; *St. Louis, S. W. Ry.* v. *United States,* 262 U. S. 70, 76. Here the appellant is confronted with the finding that it has executed a formal

contract which bars its recovery unless it sustains the burden of proving duress.

The objection that the contract by which the parties settled the controversy between them was without consideration is without weight. *Savage Arms Corp.* v. *United States,* 266 U. S. 217.

*Affirmed.*

MR. JUSTICE SUTHERLAND took no part in the case.