## UNITED STATES v. AMERICAN SALES CORPORATION.

## AMERICAN SALES CORPORATION v. UNITED STATES.

District Court, S. D. Texas, at Houston. July 6, 1928.

Nos. 997, 998.

1. **United States ⊂⇒59—Government's obligation on contracts of its agents depends on extent of agent's authority.**

The obligation of the United States on contracts entered into by its agents empowered by Congress must always be examined in the light, not of what principals acting together may do, but of what an agent so authorized may commit his principal to.

2. **United States ⊂⇒70(1)—United States, in commercial transactions, is bound by practices governing individuals.**

The United States in commercial transactions is bound by the practices of ordinary business dealings governing individuals.

3. **United States ⊂⇒72—Government officers, after making valid contracts for sale of surplus war supplies, held not authorized to agree to reduction of contract price (Comp. St. § 6941a; 5 USCA § 211).**

Where government officers made valid contracts for sale of surplus war department material under Act July 9, 1918 (Comp. St. § 6941a) and Act July 11, 1919 (5 USCA § 211), which contracts were so far executed on buyer's part that it had paid $100,000 on price, government officers could not subsequently modify agreement to reduce contract price and their attempts to do so were nullity, under rule that agent authorized to sell has no authority to rescind, release, or modify sale.

4. **United States ⊂⇒40—Persons dealing with government agents are charged with knowledge of limitations on agents' powers.**

All persons dealing with government officers or agents are charged with knowledge of limitations on their powers.

At Law. Actions by the United States against the American Sales Corporation and by the American Sales Corporation against the United States. Judgment for the United States in action in which it is plaintiff, and for American Sales Corporation in action in which it is plaintiff, to the extent indicated in opinion.

H. M. Holden, U. S. Atty., of Houston, Tex., Will H. Krause, Sp. Asst. U. S. Atty., of Washington, D. C., and Howell Ward, Asst. U. S. Atty., of Houston, Tex.

McDonald & Wayman, of Galveston, Tex., and T. W. Gregory, of Houston, Tex., for American Sales Corporation.

HUTCHESON, District Judge. These two suits involve the same transaction, a sale in 1920 of 7,770 escort wagons. The first suit is an action on the part of the United States to recover a balance due on a contract for the sale of the wagons at $55.20 each. The second is a suit by the sales corporation to recover an amount due it on account of its having paid, at the price of $30.25 each, for more wagons than it received.

Plaintiff, the United States, admits the overpayment and concedes that the defendant is entitled to a credit on the account sued for of $12,000 on account of this overpayment. The defendant denies that it owes any amount to the United States, asserting that, while it is true that it did, in November and December, 1920, execute contracts for the purchase of 7,770 wagons, these contracts were, on July 20, 1921, canceled and abrogated by the substitution of new contracts, reducing the price as to the undelivered wagons from $55.25 per wagon, to $30.25.

The United States admits that such change was attempted and new contracts executed as claimed by the defendant, but it asserts that these new agreements were wholly without consideration and executed by persons having no authority. The facts determining the rights of the parties are undisputed. These are briefly, that pursuant to the acts of July 9, 1918 (40 Stat. 845, 850 [Comp. St. § 6941aa]), and July 11, 1919 (41 Stat. 104 [5 USCA § 211]), which provide that the Secretary of War "is hereby authorized to sell any surplus supplies * * * now owned by and in the posses-.

sion of the government for the use of the War Department to * * * any corporation or individual, upon such terms as may be deemed best," agreements to sell were made with the American Sales Corporation 7,770 class A escort wagons, complete, stored at the Hawthorne Warehouse, Chicago, Ill., at $55.25 each.

These agreements were made with the defendant, after similar agreements, made in August, 1920, with Frank A. Winerich, or Frank A. Winerich Motor Company, had been canceled. The contracts with the American Sales Corporation were formal contracts, duly executed and delivered, and in accordance with their terms the defendant paid the required 10 per cent. deposit, amounting to $41,430.90, and paid $55,250 in advance for the first 1,000 wagons, making a total check of $96,680.90.

After the making of the first contract in November, three additional contracts, covering 268 wagons, 4 wagons, and 1 wagon, respectively, and using the same terms, were entered into on December 9, 1920. The defendant Sales Corporation, in its brief, as to the substance of these contracts and the status of the parties, says: "The United States sold and had agreed to deliver, and the company bought and agreed to take in lots of 1,000 or more by June 30, 1921, 7,770 wagons at $55.25 each. The United States was to furnish free storage and assume the fire hazard. The United States held $98,227.10 as a deposit and as a payment for 1,000 wagons."

Thereafter the defendant, finding it difficult, if not impossible, to move the wagons on account of various conditions, among them a claimed depression, appealed to Maj. Castleman, the officer who had signed the original contracts, for an extension of time and a reduction of price, which appeal was refused; the officer telegraphing the company on March 19, 1921: "Be advised by War Department that Director of Sales has ruled your company will be held to terms of original contract."

Thereafter Morris, for the defendant company, for the third time urged a modification, and after considerable correspondence succeeded in obtaining new contracts, reducing the price from $55.25 to $30.25. Defendant paid for all the wagons called for by the contracts, 571 already delivered before the making of the new contract at the original price, $55.25 each, and the remainder at $30.25, the price agreed upon in the new contract, but the United States failed to deliver 400 of the wagons so paid for.

Upon these facts the United States contends that the contract claimed to have resulted from the new agreement was a mere nudum pactum, because without consideration, and further was void because those who acted for the United States were without authority in the premises.

Defendant, as to the first contention, correctly says in its brief: "When the new contract was made in July, 1921, there had been no breach of the old contract. The company had done everything that it was bound to do. It had paid all that was required, the money was held by the United States, and it had until November 1 in which to receive and pay for the undelivered wagons. The United States could have stood on the contract and made no modifications. On two occasions they did refuse to change the terms, but, after listening to Dr. Morris' presentation of the extraordinary conditions, they did agree to new terms. There is no suggestion but that all parties acted in the utmost good faith."

To which the United States replies, waiving for the moment the question of authority, and conceding for the argument that the officers had the power to make settlement and compromise of disputes, that the very statement of the case made by defendant defeats its position, for, in order for there to be a binding settlement of a dispute, there must be a dispute to settle, whereas here nothing was in dispute. The matter was presented and determined upon the view that to insist upon the contract would work a hardship upon the defendant, which consideration, however meritorious between individuals dealing equally and for themselves certainly has no place in guiding the actions of officers of the United States in dealing with its property. They say, therefore, that that line of cases represented by United States v. Corliss Engine Co., 91 U. S. 321, 23 L. Ed. 397, has no application, and they say further that, because of the fact that there was no release of the government from its obligations to sell, but merely a reduction in the price which it was to receive, and because of the further fact that the contracts were executed, that principle stated in Savage Arms Corp. v. United States, 266 U. S. 220, 45 S. Ct. 31, 69 L. Ed. 253, and approved in Hartsville Mill v. United States, 271 U. S. 43, 46 S. Ct. 389, 70 L. Ed. 822, viz.: "It is enough to say that the parties to a contract may release themselves, in whole or in part, from its obligations, so far as they remain executory, by mutual agreement, without fresh consideration. The release of

one is sufficient consideration for the release of the other," is without application here.

Whether the United States is correct on these points I do not find it necessary to determine, for I think it so plain as not to admit of argument that the case goes in favor of the United States on the other point, the want of authority on the part of the officers assuming to act for it, and this, not upon the theory that the United States must be given favored treatment by this court, but upon the plainest general principles governing the acts of agents authorized to sell for their principals.

[1] For it must be constantly borne in mind, in considering the rights of the United States growing out of the acts of its officers, that the United States never acts directly, but always through agents, and that the effect of the acts of these agents must be determined by the power granted to them. In short, the obligation of the United States on contracts entered into, not by Congress, but by agents empowered by Congress, must always be examined in the light, not of what the principals acting together may do, but of what an agent so authorized may commit his principal to.

[2, 3] Applying to this case, then, the rule invoked by the defendant that the United States, in commercial transactions, is bound by the practices of ordinary business dealings, and making specific application here of the rule laid down in Cooke et al. v. U. S., 91 U. S. 398, 23 L. Ed. 237, if the United States "comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there," it will be found that, were this suit brought by an individual to recover a price upon a contract of sale made for him by his agent, and thereafter sought to be rescinded or modified by that same agent, that individual could recover, just as here the United States may, and this upon the soundest and broadest general principles.

Here is a case in which Congress having by statute empowered the Secretary of War to sell any surplus supplies upon such terms as may be deemed best, and such authority having been exercised, it was sought by the agent thus empowered to exercise further authority not granted to him, to rescind in part, release in part, modify in part, the sale effected. That this cannot be done the authorities are agreed.

In Clarke & Skyles on the Law of Agency, vol. 1, § 226, p. 533, the matter is stated thus: "Where an agent has been employed to sell property, unless otherwise specially authorized, his agency is for that purpose only, and when he has accomplished the object of his agency by making a complete contract of sale, his authority necessarily ceases, and he has no power thereafter, by virtue of his original employment, to do any act on behalf of his principal in reference to the subject matter of the agency. He cannot, after sale has been made, cancel or rescind the contract, or receive back and resell the property thus once sold by him, unless he receives new authority to that effect. Luke v. Griggs, 4 Dak. 287 [30 N. W. 170]; Diversy v. Kellogg, 44 Ill. 114 [92 Am. Dec. 154]; Ludwig v. Gorsuch, 154 Pa. [413, 26 A. 434]; Adrian v. Lane, 13 S. C. 183; West End Hotel Co. v. Crawford, 120 N. C. 347 [27 S. E. 31].

Again the author states the matter on page 588: "It is a well-settled rule that an agent with authority to sell goods has no authority, after the contract of sale has been completed or executed, to revoke or rescind the sale and receive back the goods which he had previously sold, or to alter his contract in any material point, nor to enter into a new contract of sale with the original purchaser. Fletcher v. Nelson, 6 N. D. 94 [69 N. W. 53]; Adrian v. Lane, 13 S. C. 183; Bradford v. Bush, 10 Ala. 386.

Corpus Juris, vol. 2, p. 608, states it thus: "Ordinarily a sales agent is supposed to be employed to contract a sale, and has no implied power, once this is done, either to undo or modify the contract. The sale completes the transaction, and there is no presumption, from the mere authority to sell, that the agency continues so as to enable the agent to rescind the sale and accept a return of the property, or make another contract for the sale of the same property, or to offer the purchaser further inducements to carry out its terms, or to adjust the damages resulting from a breach of its terms. [Crunden] Pa. Mfg. Co. v. Turner [283 Pa. 545], 129 A. 580; [Moorman] Mfg. Co. v. Selsor [Mo. App.] 226 S. W. 89; [M. S. Sulunias Banana Co. v. Fruit Dispatch Co., 18 Ga. App. 306], 89 S. E. 376; [Bernstein v. Schwartz, 108 Wash. 271], 183 P. 105; [Caffry v. Wilkie], 197 N. Y. S. 552 [91 N. E. 1110]; [Leverett v. Garland Co., 206 Ala. 556], 90 So. 343; [Mitchell v. Lowden], 288 Ill. 338 [123 N. E. 566].

Again the matter is thus stated in 2 Corpus Juris, 617: "As a general rule a power to sell land or to do some act in connection with a sale conveys no authority to modify or rescind the contract of sale after it is

made, and an agent cannot thereafter without his principal's consent cancel the contract so as to release the purchaser." West End Hotel Co. v. Crawford, 120 N. C. 347, 27 S. E. 31. See also Clarke & Skyles, Agency, § 235, p. 554.

[4] Applying these principles which govern ordinary business dealings to the facts of this case, I find no escape from the conclusion that, when the officers of the government had made a valid contract of sale, so far executed on defendant's part as that it had paid $100,000 to the government, they could not through any form make effective a reduction in the purchase price called for in these contracts. They having endeavored to do so, their act is a nullity because wholly beyond their powers, of the extent and the limitation upon which powers the law charges all persons dealing with them. Whiteside v. U. S., 93 U. S. 248, 23 L. Ed. 882.

It follows, then, that the defendant stands as to cause No. 997 without defense against plaintiff's suit, and must account to plaintiff for the amount sued for, less, however, a credit of $12,100 to which by reason of the shortage in delivery of wagons it is entitled, and that judgment should be entered in that suit for the amount due the United States after making such credit.

In the other suit, in which the American Sales Corporation is plaintiff, D. L. No. 998, I think it clear that plaintiff is entitled to recover the amount sued for, but, of course, not entitled to a double recovery, through a judgment in that cause and a credit in cause No. 997.

Let judgments disposing of the two causes be so drawn and presented as to give the United States the amount due it, and giving the American Sales Corporation either a recovery in D. L. 998, or a credit in D. L. 997, but not both.