Booth, Chief Justice,
delivered the opinion of the court:
The defendant interposes a demurrer to plaintiff’s petition.
The gravamen of the plaintiff’s petition consists of allegations of fraud and conduct constituting coercion and duress upon the part of the officials of the Fleet Corporation. The pertinent facts follow:
The plaintiff is a subject of Italy, and was not in America at any time during the course of the proceedings involved herein. On June 25, 1917, the plaintiff entered into two contracts with the Standard Shipbuilding Corporation of New York to construct two standard cargo steamships. The vessels were to be of 7,300 tons deadweight capacity and were *263 to cost $1,277,500 each, the final price to be based upon $175 deadweight ton capacity. ,In accord with the terms of the contracts, the plaintiff had advanced to the builder on August 3, 1917, $562,100 and was financially able to meet his future obligations under the contracts. On August 3, 1917, the President, acting through the Fleet Corporation, to whom he had delegated the authority conferred upon him by the act of June 15, 1917, requisitioned the plaintiff’s contracts and took over the undertakings in their entirety for and on behalf of the United States. The plaintiff thereafter received the usual requisition notices and was duly informed as to the method of procedure and his rights in the premises. No further payments were made by the plaintiff to the shipbuilding company, and the requisition order and subsequent notices were fully complied with by the plaintiff. On March 3,1918, the plaintiff, at the request of the defendant, presented his claim to the Fleet Corporation for just compensation. The claim presented embraced damages as well as the advanced payments made, totaling, it is alleged, the sum of $1,276,094.86, plus interest thereon. In September, 1918, the Fleet Corporation, acting in pursuance of the urgent deficiencies act of June 15, 1917, fixed by the terms of a written agreement the plaintiff’s just compensation at $562,100, plus interest, and therein provided that the plaintiff could accept 75% of this amount and sue in this court for such additional sum as he deemed sufficient to make up just compensation. This agreement was never executed. The plaintiff was willing and ready to sign it, but the officials of the Fleet Corporation never did sign it. The plaintiff at this point charges that the officials of the Fleet Corporation, fully cognizant of his critical financial condition, which he sets out in full, did in December, 1918, notify him that they would not execute the above agreement of September, 1918, and would not make any award under the urgent deficiencies act, but that they would pay to the plaintiff the full amount, without interest, of all advanced payments made to the shipbuilding corporation by the plaintiff, and in addition a reasonable sum for counsel fees and expenses. The plaintiff declined to accept the proposition, and thereafter, *264 at- a meeting between the parties on February 6, 1919, the officials of the Fleet Corporation refused a hearing upon the plaintiff’s claim so far as it was based upon the value of plaintiff’s contracts, the Fleet Corporation contending that the Government’s liability extended only to reimbursement for tangible property taken, a position the officials assumed at the outset and persisted in to the close of the negotiations.
It is further alleged that plaintiff, a foreigner unfamiliar with American laws and ignorant as to the exact situation with reference to the requisitioning processes and liability of the Government, relied upon the statements and representations of the officials of the Fleet Corporation, and the latter, conscious of his decidedly unfavorable financial condition, sought to take advantage of the same, and did thereafter force him into executing, on March 19,1919, under protest, a final settlement agreement, a copy of which is made a part of his petition, wherein he agreed to and did accept in full satisfaction and accord of all his claims the sum of $602,100, which sum was thereafter paid to the plaintiff and still retained by him, credit of the amount being conceded to the defendant in the plaintiff’s petition wherein the sum of $1,074,950 is in this suit asked.
The existence of fraud and duress is not to be presumed, and obviously the allegations of the petition must be sufficiently explicit to disclose the facts upon which such a charge may be maintained. If the petition fails to set out a case of fraud and duress, the demurrer should be sustained. Two circumstances-are relied upon by the plaintiff to nullify the final settlement and release agreement of March 19, 1919. This agreement is manifestly a bar to plaintiff’s right of recovery, and unless it may be successfully challenged its comprehensive terms completed the negotiations between the parties and concluded the controversy herein involved. First it is alleged that the officials of the Fleet Corporation “ sought ” to take advantage of plaintiff’s financial condition and press him into a disadvantageous and unjust settlement. To sustain the charge plaintiff recites his monetary obligations, the war conditions which affected them, and then im *265 putes knowledge of these facts to the officials of the Fleet Corporation. Unless we may impute to the officials of the Fleet Corporation a sinister purpose to profit by plaintiff’s distressing financial condition by resorting to an inference that the existence of one state of facts warrants a conclusion as to the motive and cause of another, we can not sustain the ■charge. It does not follow, either as a means of pleading or as a principle of law, that because one party to a transaction is harassed by creditors, that the other party acquainted with the situation uses it to the other’s disadvantage. The plaintiff entered into his two shipbuilding contracts when war was flagrant and the act of June 15, 1917, in force. The United States was in the war at the time and the plaintiff must have known from existing conditions that .ships were a prime necessity in the prosecution of the war, and assuredly must have anticipated the disturbed condition of financial affairs. To simply assert the plaintiff’s condition and follow with an allegation that the defendant “ sought ” to use it is in our opinion quite too indefinite. On the other hand, including the second charge of representations and statements made, as well as failure to consider a claim for the taking of contracts and their value instead ■of tangible property, the petition as a whole fails to state a cause of action. The act of June 15, 1917 (40 Stat. 182), inaugurated the Government’s war policy of acquiring its needed ships, whether in course of construction or not. It .authorized the placing of compulsory orders with any person for materials to build ships, to requisition, modify, suspend, or cancel contracts to build ships, and without further detail comprehended a nation-wide purpose to acquire the ■shipping interests of the Nation to aid in winning the war. The President, or the officials or department to whom he might delegate his authority, proceeded at once to carry out the purposes of the act, and took over with general orders all ships under contract for or in course of construction in all the shipbuilding yards of the country. The act empowered the President or his delegated authority to fix compensation and left open to the owners of contracts or vessels the right to accept 75% of the amount so fixed and sue in this court *266 for additional sums. An undertaking so vast, a proceeding necessitating the formation of policies, orders, notices, etc., was not to be formulated instanter, and, what is of vital importance here, left open honest and debatable opinions as to whether just compensation for the taking of vessels in course of construction should be predicated upon the value of the tangible property acquired, including the expenses and advanced payments made by the .owner or the value of the contracts to construct the ships. The act of June 15, 1917, authorized the President to fix just compensation, but did not prescribe the basis for fixing the same, so that in determining this important issue the Fleet Corporation was compelled to construe the act and arrive at what it thought was the legitimate basis. This was done and the Fleet Corporation adopted and adhered to the principle of awarding shipowners the full amount of advanced payments made on contracts for construction and all out-of-pocket expenditures for materials, supplies, blue prints, etc., etc., believing and acting upon their construction of the law and the facts that what was in reality taken was tangible property and not the contracts. This plaintiff, according to the petition, was offered terms of settlement in keeping with the policy and .opinion of the corporation. The transactions under the act of June 15, 1917, during all the periods of negotiations involved in this suit, had not been judicially determined to be a requisitioning of contracts to build ships. The issue was res integra, and this court on April 2B, 1923, more than four years after the execution of the final release hereinbefore noted, upheld by its opinion in the Brooks-Scanlon Corporation case, 58 C. Cls. 274, the contention of the Fleet Corporation that tangible property taken under the statute measured the extent .of just compensation to the owner of contracts to build ships. The issue was finally set at rest on May 12, 1924, when the Supreme Court reversed the Brooks-Scanlon case, 265 U. S. 106, and for the first time it was definitely and finally settled that the contracts of owners were taken and just compensation to the owners must be awarded on that basis. Therefore, it is convincing that a charge .of misrepresentation predicated upon a failure to grant the plaintiff an award upon the basis of contracts *267 requisitioned fails, in view of the opportunity for and existence of contrary opinion, applied by the corporation to all claimants situated as the plaintiif herein is situated. Surely we would not attribute bad faith and bad motives to the officials of the Fleet Corporation, even though the plaintiff should be able to establish the facts alleged in his petition by testimony. The Fleet Corporation should have paid the plaintiff 75% of the award made to him under the urgent deficiencies act .of June 15, 1917, but the failure to do so emphasizes the fact that this court was open to the plaintiff and suit could have been instituted at once, and what thereafter took place was a belated performance, except as to interest, of the terms of the proffered settlement.
As to an award of interest as part of just compensation, this subject, like the subject of what was taken, was also res mtegra. The Supreme Court in the case of Seaboard Air Line Railway Co. v. United States, 261 U. S. 299, for the first time decided the validity of including interest in the award, so that the officials of the Fleet Corporation were justified in concluding up to this time that section 177 of the code prohibiting interest allowances upon claims against the Government was the established policy of the Government. It would be extremely difficult, in fact impossible under conditions existing at the time, to go so far as to nul - lify an agreement wherein the sum offered in full settlement o,f a shipbuilding claim was accepted in full, a complete release executed, the sum retained without complaint or objection for over ten years, and then an insistence pleaded that, because of the representations and statement made by the officials respecting the extent of the sum they were willing to pay, the plaintiff was forced into an unjust and inequitable settlement. As a matter of fact, it is more to be inferred that the decision of the Supreme Court in the Brooks-Scanlon-ease brought to the attention of the plaintiff the first notice that he might and would have by litigation recovered more. What Mr. Whipple said to plaintiff’s representative was in no sense coercive. The official simply put before him the exact facts; by no process of reasoning was the plaintiff compelled to accept the offer made. To nullify final contracts of settlement exacts allegations specific in character *268 and of sufficient inherent clearness to establish fraud or duress. In Hartsville Oil Mill v. United States, 271 U. S. 43, 49, the Supreme Court said:
“ Before the coercive effect of the threatened action can be inferred, there must be evidence of some probable consequences of it to person or property for which the remedy afforded by the courts is inadequate.”
No evil motive other than a desire to secure a lawful adjustment is possibly ascribable to the officials in charge, and the whole course of proceedings as alleged in detail in the petition clearly discloses that the cause of delay and the inconveniences suffered by the plaintiff were due not to a desire to withhold payment, but a wish to adjust the matter upon the established basis the Fleet Corporation had generally offered to all others in a similar situation. The plaintiff maintained an authorized agent in this country. To him he committed “ without limitations or restrictions of any knd,” as his attorney in fact, authority to act for and in behalf of him. This attorney in fact executed the final settlement and release agreement of March 19, 1919, and the plaintiff ratified his act by accepting the sum paid. This release and settlement by its terms and on its face indicates no involuntary act. It contains obligatory words of such plain legal import that one intending to escape from its provisions would obviously refuse to sign it. The plaintiff’s agent signed it with this provision in it, viz, releasing “ all claims, demands and/or liability of every sort and nature whatsoever, arising in any manner whatsoever from the beginning of the world to the date of these presents in respect of or in connection with said hull number twelve (12) and said hull number thirteen (13) and each of them and in respect of or in connection with the aforesaid contracts to build the said hulls.”
This court was open to the plaintiff during the entire tiTne consumed in the settlement of the controversy, and there was no legal obligation upon the part of the plaintiff to accept or consider any offer made to him by the Fleet Corporation. In the case of Thompson et al. v. United States, 62 C. Cls. 516, 528, this court, referring to the act of June 15, 1917, said:
*269 “Even if Congress bad not passed this act the person whose property was taken would have had the right to bring the suit therein provided for under the provisions of section 145 of the Judicial Code; and the act of June 15, 1917, does not confer upon the person any greater rights or remedies than he already had, except to provide for the payment of 75 per cent of the just compensation determined by the President.”
The demurrer is also directed to the statute of limitations. Sec. 156, Judicial Code. The petition in the case was filed July 5, 1929, almost 12 years after the cause of action accrued. Section 156 of the code fixes the limitation for suits in this court at six years. The plaintiff contends that under the proviso to section 156, he being a resident of Italy and “ beyond the seas at the time the claim accrued,” the statute extends the limitation period to three years after his disability has ceased. We think it unnecessary to discuss the contention. The case from our point of view we believe to be effectually disposed of by the failure of the petition to set forth sufficient facts to constitute a cause of action in any event.
The demurrer will be sustained and the petition dismissed. It is so ordered. .
LxttletoN, Judge, and GkeeN, Judge, concur.