**LEADER GLOBAL SOLUTIONS, LLC, Plaintiff,**

v.

**TRADECO INFRAESTRUCTURA, S.A. DE C.V., Defendant.**

**Case No. 1:15-cv-22130-UU**

United States District Court, S.D. Florida.

Signed 01/12/2016

Matthew Joseph McGuane, Jason Kenneth Kellogg, Levine Kellogg Lehman Schneider Grossman LLP, Miami, FL, for Plaintiff.

Alexander Angueira, Alexander Angueira, P.L.L.C., South Miami, FL, for Defendant.

### *ORDER*

URSULA UNGARO, UNITED STATES DISTRICT JUDGE

THIS CAUSE is before the Court upon Plaintiff Leader Global Solutions, LLC's

("Leader Global") Motion to Dismiss Defendant Tradeco Infraestructura, S.A. DE C.V.'s ("Tradeco") Counterclaims. D.E. 27.

THE COURT has considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

## I. *Background*

On June 10, 2015, Leader Global filed a single count Amended Complaint alleging a state law breach of contract claim. D.E. 6. On November 9, 2015, Tradeco filed an answer which included three state law counterclaims. D.E. 17. Count I is a breach of contract claim; count II is a fraud claim; count III is an unjust enrichment claim. To that end, the allegations supporting the counterclaims are as follows:

In August 2014, Tradeco and Leader Global entered into a Master Sales Agreement ("MSA") whereby Leader Global would purchase equipment and machinery for Tradeco's resale to its customers. D.E. 17, ¶ 1.[1] Under the terms of the MSA, Tradeco would provide a 10% deposit of the purchase price for the goods and Leader Global would pay the remaining 90%; after delivering the goods to its customers and receiving payment, Tradeco would settle its line of credit[2] with Leader Global. *Id.*

Certain events in the spring of 2015 forced Tradeco and Leader Global to revisit the MSA. *Id.* ¶ 2. Specifically, Tradeco was unable to make a payment due under the MSA on February 27, 2015, and also

needed to pay its suppliers to continue its business operations. *Id.* In March 2015, Leader Global and Tradeco orally modified the MSA; pursuant to the modification, Tradeco would provide $2 million to Leader Global who would keep 10% as a commission and use the remaining funds to pay Tradeco's suppliers (the "Amended MSA"). *Id.* ¶ 3. The Amended MSA also granted Tradeco a ninety day extension to make the February 27, 2015 payment. *Id.* ¶ 6.

On April 15, 2015, Tradeco provided Leader Global with a list of the suppliers and the amount of money each was to receive. *Id.* On April 16, 2015, Tradeco made the $2 million payment to Leader Global. *Id.*

On April 17, 2015, Leader Global requested Tradeco to execute and return documents regarding the payments to be made to its suppliers, and also requested a 10% deposit. *Id.* ¶ 4. The same day, Leader Global informed Tradeco that certain litigation in the United States, involving a related Tradeco entity, was delaying Leader Global's payments to Tradeco's suppliers. *Id.* ¶ 5. Leader Global also disclosed to Tradceo, for the first time, that the payments to Tradeco's suppliers required approval from Leader Global's insurance underwriter, Zurich. *Id.*

On April 22, 2015, Tradeco returned to Leader Global executed documents that Leader Global required to establish the Amended MSA: an Invoice, Order Acceptance, and Promissory Note. *Id.* ¶ 8. The Invoice, however, shows the $2 million reducing the outstanding debt owed under

---

**1.** The date the parties entered the MSA was taken from the MSA itself, which the Court considers in this Motion.

**2.** Tradeco characterizes the debt arising under the MSA as a line of credit, which typically means a credit arrangement in which a

financial institution agrees to lend money to a customer up to a maximum loan amount. The MSA, however, makes no reference to that term. The Court interprets "line of credit" as the debt Tradeco owes Leader Global in connection with the MSA.

the MSA, rather than being used to pay Tradeco's suppliers.[3]

On April 28, Leader Global informed Tradeco that Zurich would not approve the restructuring of the line of credit and that it was repudiating the Amended MSA. *Id.* ¶ 10.

As a result of Leader Global improperly securing the $2 million payment and refusing to apply it consistent with the terms of the Amended MSA, Tradeco was unable to continue its business activities and fulfill its obligations both to Leader Global and other commercial relationships. *Id.* ¶ 13.

## II. *Standard of Review*

■ On a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted, the court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir.2010). The Court does not view each fact in isolation, however, but considers the complaint in its entirety. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

■ Conclusory allegations will not suffice to state a claim; rather, the complaint must allege sufficient facts to state a plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). This means that the factual content of the complaint must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards*, 602 F.3d at 1291 (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir.2008)). So long as the complaint properly alleges facts that make its claims plausible, the Court must view the complaint's allegations in the light most favorable to the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir.2010). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." *Bernard v. Calejo*, 17 F.Supp.2d 1311, 1314 (S.D.Fla.1998) (citing *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993)).

## III. *Discussion*

■ For purposes of Rule 12(b)(6) review a court generally may not look beyond the pleadings. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n. 11 (11th Cir.1997). The pleadings include any information attached to a complaint. Fed. R.Civ.P. 10(c); *Crenshaw v. Lister*, 556 F.3d 1283, 1291 (11th Cir.2009). However, a district court may consider a document attached to a motion to dismiss if it is (1) central to the party's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir.2010).

■ In determining whether a document is central to a party's claims, courts consider such factors as: whether the claims depend on the documents, *see Botero v. South Florida Pain & Rehabilitation Center Corp., Inc.*, No. 12–20924, 2012 WL 3614329, at *3 (S.D.Fla. Aug. 21, 2012);

---

3. The Court considers the Invoice in this Order. See discussion *infra,* Section III.

whether the contents of the documents are alleged in the complaint, *Gonzàlez v. Watermark Realty Inc.*, 2010 WL 1299740, at *2 (S.D.Fla. Mar. 30, 2010); *see In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir.1999); whether the documents form a "necessary part of [the plaintiff's] effort to make out [his] claim," *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005); *see e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002), and whether the documents are referred to throughout the complaint. *See Infante v. Bank of America*, 468 Fed. Appx. 918, 921 n.2 (11th Cir.2012) (unpublished); *Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, 932 F.Supp.2d 1336, 1344 (S.D.Fla.2013) (same); *Gonzalez*, 2010 WL 1299740 at *2 (same). If the documents contradict the general and conclusory allegations of the pleading, then the documents govern. *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 13–21653–CIV, 143 F.Supp.3d 1283, 1290-91, 2015 WL 7007983, at *4 (S.D.Fla. May 18, 2015) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1284 (11th Cir.2009)).

■■■ Leader Global has attached the Invoice and Order Acceptance to its Motion, which the Court will consider herein because Tradeco has emphasized that those documents were related and necessary to establish the Amended MSA (D.E. 17, ¶¶ 6, 8); additionally, Tradeco refers to the content of the Invoice as proof that it made the $2 million payment consistent with the Amended MSA. *Id.* n.1. The Court also considers the MSA; it is central to Defendant's claims because the alleged amendment is an oral modification to the MSA; Tradeco additionally cites the content of the MSA (*Id.* ¶ 1) and otherwise refers to it throughout the counterclaims. (*Id.* ¶¶ 2, 6, 9, 19, 20).

Further, Tradeco has neither challenged the authenticity of the Invoice, Order Ac-

ceptance, or MSA, nor argued in its Response that the documents are not properly before the Court. *Edwards v. HSBC Mortgage Servs., Inc.*, No. 1:12–CV–4162–JEC, 2013 WL 4806922, at *4 (N.D.Ga. Sept. 9, 2013) ("As plaintiff has responded to the defendant's motion to dismiss and has not challenged the authenticity of the attached documents, the Court will consider the documents in assessing the defendant's motion to dismiss for the purposes of determining whether the complaint meets the *Twombly/Iqbal* plausibility standard.").

## A. Count I–Breach of Contract

■■■ Tradeco alleges that Leader Global breached the Amended MSA by applying the $2 million to Tradeco's outstanding debt. Leader Global argues that any oral modification is barred by the MSA's provision limiting amendments to signed writings. Leader Global additionally argues that the Invoice and Order Acceptance attached to its Motion expressly contradict Tradeco's allegations and therefore Tradeco fails to state a plausible claim. In response, Tradeco asserts that it has alleged an oral modification to the MSA and that Leader Global secured the Invoice and Order Acceptance through duress, and thus the documents are void. *Id.* ¶ 8.

■■ Under Florida law, to overcome the clauses in the MSA that limit amendments to signed writings, Tradeco must show: "(1) mutual assent; (2) that both parties (or at least the party seeking to enforce the amendment) performed consistent with the terms of the alleged oral modification (not merely consistent with their obligations under the original contract); and, (3) that due to Tradeco's performance under the contract as amended Leader Global received and accepted a benefit that it otherwise was not entitled to under the original contract (i.e., inde-

pendent consideration)." *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn,* 145 So.3d 989, 995 (Fla. 4th DCA 2014) (alteration in original).

Leader Global has conceded that Tradeco has properly alleged mutual assent, but argues that Tradeco fails to establish prong 2 given the terms of the Invoice. The Court agrees.

Plaintiff has made a number of allegations consistent with the terms of the alleged Amended MSA: specifically, that on April 15th Leader Global requested and Tradeco provided information related to the suppliers who were to receive payments from the $2 million; that on April 16th it remitted the $2 million; and, that on April 17th Leader Global requested a 10% deposit, and that Tradeco sign documents regarding the payments to be made to its suppliers.

The terms of the Invoice, however, expressly contradict Plaintiff's allegations regarding the Amended MSA, rendering the claim implausible. The Invoice is billed to Tradeco, dated April 21, 2015, and was executed by Tradeco's Vice President on April 22, 2015. D.E. 27–1. The Invoice reflects $6,983,818.00 in purchases, a purchase fee of $414,157.43, and shows the $2 million reducing the outstanding balance in the Invoice. *Id.*[4] Critically, the Invoice does not contain *any* terms consistent with the core bargain in the alleged Amended MSA; it does not state that the $2 million will be disbursed to Tradeco's suppliers,

nor does it reflect a 10% commission on the remitted payment.[5] The Invoice further states that:

All purchases are subject to the MSA entered into between Leader Global and Purchaser. The undersigned declares that having received the goods sold at its entire satisfaction this negotiable Invoice is irrevocably accepted.... (*Id.*)

Thus, even construing the allegations in a light most favorable to Tradeco, the Invoice reflects that the parties were acting consistent with the terms of the MSA rather than alleged oral Amended MSA. Moreover, it is undisputed that the Invoice reflects that Leader Global received a payment owed under the MSA, not a benefit arising from the alleged Amended MSA. Thus, Tradeco has failed to plausibly allege an oral modification to the MSA and thus its breach of contract claim fails.[6]

#### i. Whether Tradeco Can Rely on Economic Duress

 Tradeco argues that after remitting the $2 million to Leader Global it had no alternative but to sign the Invoice; as a result, Tradeco argues, the Invoice is void because it was executed under duress exerted by Leader Global.

 Under Florida law, economic duress permits an aggrieved party to rescind an agreement that was entered into under severe financial anxiety or pressure. *Amoco Oil Co. v. Gomez,* 125 F.Supp.2d 492, 503 (S.D.Fla.2000).[7] "Establishing a

---

4. The Order Acceptance shows a corresponding $6,983,818.00 in purchases and references the Invoice's number and date. D.E. 27–2.

5. The purchase fee in the Invoice equates to a 5.9% commission on the total purchases.

6. The only term that is plausibly consistent with the Amended MSA is that the Invoice reflects that the remaining balance contained

therein is due 90 days from the date of Invoice. Nevertheless, this alone is insufficient to overcome the inconsistencies in the Invoice with the material terms of the alleged Amended MSA.

7. Under Florida law, economic duress is not an independent tort, only a defense or remedy in a contractual context. *NN Investors Life Ins. v. Professional Group,* 468 So.2d 532 (Fla. 3d DCA 1985).

case of economic duress is extremely difficult." *Id.* The aggrieved party must show: (1) wrongful acts or threats, (2) financial distress caused by the wrongful acts or threats, and (3) absence of a reasonable alternative course of action. *Id.* (collecting cases). "In essence, the party seeking to rescind the contract must show 'that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or free will....'" *Id.* (quoting *Finn v. Prudential–Bache Sec., Inc.,* 821 F.2d 581, 587 (11th Cir.1987)).

Even assuming the first two elements are satisfied, Tradeco fails to plausibly allege that it had no reasonable alternative course of action. The parties engaged in a course of conduct, Tradeco asserts, consistent with the Amended MSA until Leader Global conditioned its performance under the Amended MSA on Tradeco executing the Invoice and Offer Acceptance. At that point, however, Tradeco had options: It could have elected to simply not execute the documents, particularly when the terms expressly contradicted the terms of the parties' oral understanding, *see Humer v. I.R.S.,* No. 94–0982, 1995 WL 366032, at *4 (S.D.Fla. Feb. 17, 1995), or it could have filed suit to enforce the agreement. *E.g., City of Miami v. Kory,* 394 So.2d 494, 499 (Fla. 3d DCA 1981) (citing *Hartsville Oil Mill v. United States,* 271 U.S. 43, 46 S.Ct. 389, 70 L.Ed. 822 (1926) ("The rule is, however, that threatened action cannot constitute duress, when there are adequate legal remedies available with which to challenge it.") As Tradeco emphasizes in its Response, if the core bargain in the Amended MSA was Leader Global paying Tradeco's suppliers in exchange for a 10% commission on the $2 million, then Leader

Global breached the Amended MSA by disclosing after the amendment that Zurich's approval was required to disburse the $2 million *and* by presenting the Invoice showing the funds reducing the existing account receivables under the MSA. But Tradeco, at each of those junctures, had the alternative to pursue a breach of contract action against Leader Global, and there is no indication that Leader Global could have prevented Tradeco from prosecuting such a claim. *Amoco Oil Co. v. Gomez,* 125 F.Supp.2d 492 (S.D.Fla.2000) (finding the defendant had alternative course of action where the defendant claimed that she entered into a marketing and lease agreement with the plaintiff under economic duress because the plaintiff would not have otherwise repaired defective gas pumps; the defendant could have brought legal claims against the plaintiff for failing to repair the pumps as required under an existing lease agreement between the parties); *Peralta v. Peralta Food, Corp.,* 506 F.Supp.2d 1274, 1282 (S.D.Fla.2007) (same).[8] Accordingly, Tradeco has not plausibly alleged that Leader Global obtained the Invoice or Order Acceptance through economic duress.

## B. Fraud in the Inducement

Tradeco alleges that Leader Global made misrepresentations that it would restructure its line of credit under the MSA and pay Tradeco's suppliers in exchange for the $2 million payment. D.E. 17 ¶ 20. These representations, Tradeco argues, were material because it would not have remitted the $2 million had it known that Leader Global would not apply it consistent with the terms of the Amended MSA. Leader Global argues that Tradeco's fraud claim fails because the Invoice pre-

---

**8.** Defendant asserts that factual issues prevent the Court from ruling on the duress issue at this stage. The Court disagrees. Defendant's allegations are accepted as true; and the direct and inferential allegations do not show that Defendant was unable to pursue its legal remedy in a breach of contract action.

vents Tradeco from establishing that it detrimentally relied on Leader Global's representations. Tradeco argues that the Invoice was the product of duress and therefore does not defeat its claim.

■ To state a claim for fraudulent inducement pursuant to Florida law, Tradeco must allege: (1) a misrepresentation of material fact; (2) by an individual who knew or should have known of the falsity of the statement; (3) that the representing individual intended that the representation would induce another to rely and to act; (4) and, another suffered injury in justifiable reliance on misrepresentation. *Biscayne Inv. Group v. Guarantee Mgmnt. Servs., Inc.*, 903 So.2d 251, 255–56 (Fla. 3d DCA 2005).

■ No action for the tort of fraud in the inducement, however, is actionable where the alleged fraud contradicts a subsequent written contract. *Topp, Inc. v. Uniden Am. Corp.*, 513 F.Supp.2d 1345, 1348 (S.D.Fla.2007) (citing *Eclipse Med., Inc. v. Am. Hydro–Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1342 (S.D.Fla. 1999) *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro–Surgical*, 235 F.3d 1344 (11th Cir.2000). Reliance on fraudulent representations is unreasonable as a matter of law in such situations. *Id.* (citing *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1428 (S.D.Fla.1996)) (internal citation omitted). "Fraudulent inducement claims will fail even where the subsequent contract 'simply says nothing' about the allegedly false promise." *Id.* (quoting *Eclipse* 262 F.Supp.2d at 1342.

■ Here, Tradeco cannot show reliance because the subsequent Invoice contradicts the alleged misrepresentations. Tradeco alleges Leader Global induced it to remit the $2 million to Leader Global under the promise that the funds would be used to pay Tradeco's suppliers. However, the Invoice, as discussed *supra*, expressly contradicts those allegations and Tradeco has not plausibly alleged duress. Further, the MSA expressly provides that "Tradeco agrees and acknowledges ... that each invoice issued by [Leader Global] *is an individual and separate "contract"* as defined in Florida's Uniform Commercial Code ...." (emphasis added). D.E. 27–3 at 9.[9] Thus, Tradeco's fraud allegations are contradicted by a subsequent written contract, and its claim fails as a matter of law.

### C. Unjust Enrichment

■ Tradeco's final count alleges that Leader Global would be unjustly enriched if permitted to retain the $2 million.

■ Under Florida law, an unjust enrichment claim requires Tradeco to allege that: (1) it conferred a benefit on Leader Global, who has knowledge thereof; (2) Leader Global has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for Leader Global to retain the benefit without paying the value thereof to Tradeco. *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir.1999) (citing *Greenfield v. Manor Care, Inc.*, 705 So.2d 926, 930–31 (Fla. 4th DCA 1997), rev. denied, 717 So.2d 534 (Fla. 1998). However, "upon a showing that an express contract exists between the parties ... [an] unjust enrichment ... count fails." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed.Appx. 714, 722 (11th Cir.2011) (citing *Williams v. Bear Stearns & Co.*, 725 So.2d

---

9. "Contract" in Florida's Uniform Commercial Code means "the total legal obligation that results from the parties' agreement as determined by this code and as supplemented by any other applicable laws." Fla. Stat. § 671.201.

397, 400 (Fla. 5th DCA 1998)); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. 1st DCA 2008) (holding "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter"); *Kovtan v. Frederiksen*, 449 So.2d 1, 1 (Fla. 2d DCA 1984) ("It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter.").

Similar to the foregoing analysis, Tradeco fails to show an unjust enrichment claim. Because Tradeco has not plausibly alleged an oral modification to MSA, the Invoice, which under the MSA is an express contract, governs the subject matter of the dispute. Tradeco has not challenged the authenticity of the Invoice, only that it is void for economic duress or fraud, which as discussed *supra*, Tradeco has failed to do. Thus, the existence of an express contract precludes Tradeco's unjust enrichment claim as a matter of law. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion (D.E.6) is GRANTED. It is further

ORDERED AND ADJUDGED that Defendant's Counterclaims are DISMISSED WITHOUT PREJUDICE.[10] Defendant may file amended counterclaims no later than January 22, 2016.

DONE AND ORDERED in Chambers in Miami, Florida this 12th day of January, 2016.

---

10. The Court questions whether Tradeco can amend to overcome the deficiencies noted herein. Nonetheless, the Court will permit Tradeco a single opportunity to amend and state legally sufficient claims.